## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Court File No. 11-CV-00694 (JNE/FLN)

Ron Yary, Kenneth D. Resnick, Marion L.
Resnick, individually and as trustees of the
Marian L. Resnick, Revocable Trust created
on September 7, 1995, and Irving Braverman,

| | |
|---|---|
| Plaintiffs, | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| Stuart A. Voigt, | |
| Defendant. | |

This is a private securities fraud action by Plaintiffs Ron Yary, Kenneth D. Resnick,

Marion L. Resnick, individually and as trustees of the Marion L. Resnick Revocable Trust,

and Irving Braverman (collectively "Plaintiffs") against Defendant Stuart A. Voigt ("Voigt").

Plaintiffs assert Voigt made misrepresentations and omissions that induced them to invest

in Assured Financial, LLC ("Assured"), Hennessey Financial, LLC ("Hennessey"), or

convert their investments into Jaguar Financial Corporation ("Jaguar"). Voigt moves to

dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 8(a)(2), 9(b), and 12(b)(6)

because Plaintiffs' claims are barred by Plaintiffs' release and waiver in the Jaguar

Subscription Agreement and devoid of the particularity demanded by <u>Twombly</u>, <u>Iqbal</u>, and

1

the Private Securities Litigation Reform Act ("PSLRA").[1]

## BACKGROUND

In 2002, Voigt introduced Ken Resnick to an investment opportunity with Assured, a company that provided financing for residential building construction. Based on Voigt's representations, Ken Resnick and Marion Resnick invested in Assured in June of 2002 and made subsequent investments in 2003. In 2004, Ken Resnick and Marion Resnick transferred their investments from Assured to Hennessey, a financing company engaged in mezzanine financing for commercial real estate development. Subsequent to this transfer, Ken Resnick and Marion Resnick made additional direct investments with Hennessey, as did Ron Yary and Irving Braverman. All of Plaintiffs' investments with Hennessey were memorialized by promissory notes or debentures. Plaintiffs' last investments in Hennessey were made in January 2007.

By late 2007, Hennessey began experiencing severe financial difficulties following the collapse of the nation's financial and real estate markets. In response to these market conditions, Hennessy advised its investors that it was financially challenged and that if unsuccessful in securing additional financing, Hennessey would be dissolved and Plaintiffs' investments lost. To avoid such loss, Hennessey developed a re-organization plan whereby Plaintiffs could convert investments in Hennessey into preferred shares of Jaguar. The

---

[1] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

2

details of this plan were presented to Plaintiffs by Jeffrey Gardner at an investor meeting on June 25, 2008, as well as in subsequent correspondence from Hennessey and Gardner.  Each Plaintiff elected the conversion and executed the Jaguar Subscription Agreement.  (See Am. Compl. ¶ 137.)  Plaintiffs allegedly lost their investments following the Jaguar conversion and seek to recover their losses from Voigt.  Plaintiffs' claims must be dismissed for the following reasons:

First, Plaintiffs have released their claims against Voigt pursuant to Section 2.3 of the Jaguar Subscription Agreement.  As alleged in the Amended Complaint, Plaintiffs released Hennessey and its shareholders, guarantors, consultants, directors, creditors, lenders and other parties from claims relating to their prior investments.  (Am. Compl. ¶ 130.)  This release necessarily includes Plaintiffs' claims against Voigt, whom Plaintiffs allege was a director, guarantor, creditor, lender, and sales agent of Hennessey.  Plaintiffs cannot state a claim for relief against Voigt and the Amended Complaint should be dismissed.

Second, Plaintiffs fail to satisfy the heightened pleading standards imposed by the United States Supreme Court in Twombly, Iqbal and the PSLRA.  Plaintiffs' claims are predicated on (1) pre-sale representations made by Voigt which Plaintiffs allege induced them to invest in Assured and Hennessey; and (2) alleged representations made by Voigt which induced Plaintiffs to convert their Hennessey investments into Jaguar stock.  (Am. Compl. ¶¶ 148, 151.)  Neither set of claims are plausible given that Plaintiffs have failed to pled any sufficient factual predicate for those claims.

3

Plaintiffs cannot prevail based on Voigt's pre-sale representations because, as Plaintiffs allege, their losses in Hennessey were caused by the post-sale, fraudulent activity of Jeffrey Gardner and Hennessey, not Voigt's pre-sale representations. (See e.g., Am. Compl. ¶¶ 108 ("Hennessey had become a Ponzi scheme . . . Gardner and others also diverted investors' funds to finance their lavish lifestyles.")  No allegation is made that Voigt's pre-sale representations caused their losses, that Voigt actually knew or concealed the fact that Hennessey had become a Ponzi, or that he actually knew or concealed that Gardner and others were diverting investors' funds.  Such allegations are required to establish fraud based on Plaintiffs' induced-purchase theory and the absence of such allegations renders implausible Plaintiffs' claims based on Voigt's pre-sale misrepresentations.

Nor can Plaintiffs prevail on their claim that Voigt's representations induced them to convert their investments into Jaguar. This is because Hennessey and Gardner, not Voigt, presented the Jaguar reorganization plan, corresponded with Plaintiffs regarding the Jaguar Subscription Agreement, and caused Plaintiffs' losses (to the extent any occurred) relating to Jaguar.  Even if Voigt's representations regarding Jaguar are actionable, Plaintiffs cannot state a claim for relief because they have sustained no damages.  Prior to the conversion, Plaintiffs' investments in Hennessey had no value and would have been lost regardless. (Am. Compl. ¶¶ 112, 125.)  In converting to Jaguar, Plaintiffs simply exchanged worthless investments in Hennessey for worthless investments in Jaguar.  Plaintiffs did not sustain any damages from the conversion and cannot state a claim for relief.

4

Finally, Plaintiffs' Amended Complaint is implausible as a whole given that Voigt, like Plaintiffs, was an investor in Assured and Hennessey and lost investments in those funds in excess of $3.49 million dollars[2]. (See Affidavit of Stuart A. Voigt dated May 24, 2011, Exs. A, B, C). Quite simply, Voigt put his money where his mouth was and at the end of the day was in the same position as Plaintiffs - the holder of worthless investments.  Drawing upon its judicial experience and common sense, as this Court is entitled to do on this Rule 12 motion, this Court should conclude that Plaintiffs' claims are facially implausible because Voigt's personal losses in Assured and Hennessey are far greater than the collective loss alleged by Plaintiffs.  For these reasons, Voigt requests that his Motion to Dismiss be granted and that Plaintiffs' Amended Complaint be dismissed with prejudice.

## STATEMENT OF FACTS

The facts relevant to this Motion to Dismiss are derived from the allegations in Plaintiffs' Amended Complaint, which must be deemed true for this motion.  See Freeman v. Bechtel Constr. Co., 87 F.3d 1029, 1030 (8th Cir. 1996).  Voigt incorporates the allegations set forth in the Amended Complaint for this motion, but denies and will dispute those allegations in the trial of this matter.

---

[2] In 2007, Voigt claimed a capital gain of $116,098 relating to his investment in Assured and a capital loss in the amount of $125,000 relating to the Garden Gate property, another investment in Hennessey.  In 2008, Voigt claimed a total of $600,000 in capital losses relating to his investments in Hennessey (including another $500,000 loss relating to the Garden Gate property). Finally, in 2009, Voigt claimed a total of $2,889,037 in capital losses relating to his investments in Assured and Hennessey.

Further, on a Rule 12 Motion to Dismiss, the Court may consider materials embraced by the pleadings and materials that are part of the public record without converting the motion to one for summary judgment. <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999). Accordingly, Voigt sets forth the following materials: (1) Affidavit of Stuart A. Voigt dated May 24, 2011, attaching Exhibit A, 2009 U.S. Individual Income Tax Return Schedule D for Stuart A. and Linda M. Voigt; Exhibit B, 2008 U.S. Individual Income Tax Return Schedule D for Stuart A. and Linda M. Voigt; and Exhibit C, 2007 U.S. Individual Income Tax Return Schedule D for Stuart A. and Linda M. Voigt; and (2) Affidavit of Bryan R. Feldhaus dated May 25, 2011, attaching Exhibit D, Jaguar Financial Corporation Subscription Agreement. Voigt's losses relating to his investments in Assured and Hennessey and the Jaguar Subscription Agreement are embraced by Plaintiffs' Amended Complaint and properly considered by this Court. (<u>See</u> Am. Compl. ¶¶ 7, 15, 24, 113, 130, 135, and 147(cc)).

## THE COMPLAINT

Plaintiffs' Amended Complaint purports to state the following claims against Voigt:

| | |
|---|---|
| Count I: | Material Misrepresentations and Omissions under the Exchange Act and Rule 10b-5; |
| Count II: | Material Misrepresentations and Omissions under the Minnesota Securities Act; |
| Count III: | Fraud and Negligent Misrepresentation; |
| Count IV: | Constructive Fraud and Breach of Fiduciary Duty; |

Count V:        Breach of Contract;

Count VI:       Equitable and Promissory Estoppel;

Count VII       Unjust Enrichment

## ARGUMENT

## I.    STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6).

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint if a party fails to state a claim upon which relief can be granted. Atkinson v. Bohn, 91 F.3d 1127, 1128-1129 (8th Cir. 1996). To avoid dismissal under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In analyzing a motion to dismiss under Rule 12(b)(6), this Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences from the complaint in plaintiff's favor. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). But, a complaint that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is deficient. Iqbal, at 1949, quoting Twombly, at 555, 557. Nor will a complaint that tenders "naked assertions devoid of further factual enhancement" suffice. Iqbal, at 1949. A complaint cannot simply "leave open the possibility that a plaintiff might later establish some 'set of disclosed fact' to support recovery." O'Neill v. Simplicity, Inc., 553 F. Supp. 2d 1110, 111 (D. Minn. 2008), quoting Twombly, 550 U.S. at

560.  A complaint must have "enough facts to state a claim to relief that is plausible on its face."  Iqbal, at 1949.

To state a claim with "facial plausibility," a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949-50.  Determining whether a plausible claim has been stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. Where a complaint only pleads facts consistent with a theory of liability, the complaint falls short.  Id.  Additionally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not 'shown' - that the pleader is entitled to relief."  Id. Finally, this Court need not accept as true any conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990.)

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF BASED ON THE RELEASE IN THE JAGUAR SUBSCRIPTION AGREEMENT.

As alleged in the Amended Complaint, Plaintiffs have released and waived all of their claims against Hennessey and its affiliated parties pursuant to Section 2.3 of the Jaguar Subscription Agreement.  (Am. Compl. ¶ 130.)  That Subscription Agreement provides:

> Upon execution of the Subscriber Agreements, the Subscriber, for and on behalf of himself and his heirs, successors, and assigns, hereby irrevocably and unconditionally waives, releases, acquires and forever discharges Hennessey and its respective affiliates and their shareholders, guarantors, consultants, employees, attorneys, accountants, officers, directors, creditors, lenders and all

> other parties of and from and against any claims related to such parties prior
> business relationship with subscriber.

(Affidavit of Bryan R. Feldhaus dated May 25, 2011, Ex. D ¶ 2.3.)  The Subscription

Agreement further provides that each Plaintiff, in executing the Subscription Agreement,

"has relied on nothing other than the Organization Documents and the Subscriber

Agreements (including all exhibits and appendices thereto) in deciding whether to make an

investment in the Company."  (Feldhaus Aff. Ex. D ¶ 2.1(f)).

The release in the Jaguar Subscription Agreement undeniably applies to Voigt whom

Plaintiffs allege was "an investor and lender to Assured and Hennessey," a "member of the

Financial Advisory Board of Hennessey," and a "sales agent for Assured and Hennessey who

personally solicited and induced Plaintiffs to invest in Assured and/or Hennessy."  (Am.

Compl. ¶ 7.)  As a result, and based upon Plaintiffs' own pleading, Plaintiffs have released

and discharged all of their claims against Voigt relating to their investments in Assured and

Hennessey.  Plaintiffs, therefore, cannot prevail on any of such claims against Voigt and fail

to state a claim for Counts I through VII in the Amended Complaint.

Although the release and waiver in the Jaguar Subscription Agreement may not apply

to Plaintiffs' claims concerning the Jaguar conversion, Plaintiffs have failed to state any

claim based on the Jaguar conversion as set forth below. Hennessey and Gardner, not Voigt,

presented the Jaguar reorganization plan, corresponded with Plaintiffs, regarding the

execution of the Jaguar Subscription Agreement, and caused Plaintiffs' losses (to the extent

any exist) in Jaguar.  Nor can Plaintiff state a claim against Voigt based on the Jaguar

conversion because Plaintiffs have sustained no damages. Plaintiffs' investments in Hennessey prior to the Jaguar conversion had no value, which Plaintiffs then converted to Jaguar stock, which also had no value. Plaintiffs, therefore, have sustained no damages as a result of the conversion. On this basis, the Amended Complaint should be dismissed in its entirety for failure to state a claim.

## III.   CERTAIN PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

If Plaintiffs' claims are not dismissed pursuant to the Jaguar Subscription Agreement, certain of Plaintiffs' claims in Count I arising from Section 10(b) of the Exchange Act (15 U.S.C. § 78j) and Rule 10b-5 (17 C.F.R. § 240.10b-5), are barred by the statute of limitations governing private securities claims pursuant to 28 U.S.C. § 1658. The statute of limitations for a private claim under Section 10(b) and Rule 10b-5 is two years from the discovery of the facts constituting the violation or five years from the violation itself:

> (b)     Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of –
>
> > (1)     2 years after the discovery of the facts constituting the violation; or
> >
> > (2)     5 years after such violation

28 U.S.C. § 1658(b).

The alleged violations underlying Plaintiffs' Section 10(b) and Rule 10b-5 claims

were misrepresentations and omissions made by Voigt with the intent to induce Plaintiffs to purchase debt securities from Assured and Hennessey.  These representations must have occurred before the purchase of the securities.

Based upon the dates of Plaintiffs' investment, as well as the April 22, 2010 Tolling Agreement[3] between the parties, the Section 10(b) and Rule 10b-5 claims of Plaintiffs who purchased securities prior to April 22, 2005 are time-barred and must be dismissed:

| Name | Investment Amount | Date of Investment | Entity |
|---|---|---|---|
| Kenneth Resnick | $75,000 | June 3, 2002 | Assured |
|  | $8,000 | June 30, 2002 | Assured |
|  | $17,000 | Nov. 1, 2004 | Hennessey |
| Marion Resnick | $200,000 | June 3, 2002 | Assured |
|  | $100,000 | 2003-2004 | Assured |
|  | $100,000 | Nov. 1, 2004 | Hennessey |
| Ron Yary | $100,000 | Jan. 28, 2004 | Hennessey |

(Am. Compl. ¶ 5.)

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF SECTION 10(B) AND RULE 10b-5.

The claims set forth in Count I of the Amended Complaint, which allege that Voigt made material misrepresentations and omissions to Plaintiffs in violation of Section 10(b)

---

[3]  Prior to suit, the parties executed a Tolling Agreement that provided: "Voigt agrees that the running of any statute of limitations, or other time limitations, applicable to any allegations set forth in the Draft Complaint will be and hereby are tolled from April 22, 2010 until October 21, 2010, or to such later date as may be agreed upon by the parties hereto."

and Rule 10b-5, have not been pled with the specificity required under the PSLRA and Fed. R. Civ. P. 8(a)(2) and 9(b), and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1318 (2011), quoting 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements Section 78j(b) by making it unlawful to "make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light fo the circumstances under which they were made, not misleading." Id., quoting 17 C.F.R. § 240.10b-5(b).

Claims under Section 10(b) and Rule 10b-5 require Plaintiffs to allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761, 768 (2008); McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009.) A pleading of such elements must satisfy the heightened pleading requirements under the PSLRA and Fed. R. Civ. P. 9(b)[4].

---

[4] Rule 9(b) requires fraud claims to be alleged with particularity.  Fed. R. Civ. P. 9(b); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997)(Rule 9(b) requires pleading who, what, when, where, and how in securities fraud claim).

The PSLRA's heightened pleading standard mandates that in a private action where the defendant is alleged to have made a misrepresentation or omission, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation  regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  This standard is required "'to curb perceived abuses' of such actions, including 'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers.'"  Horizon Asset Mgmt. Inc. v. H&R Block, Inc., 580 F.3d 755, 761 (8th Cir. 2009).

Plaintiffs must, therefore, plead the "who, what, when, where, and how" of the alleged misrepresentations.  Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008).  Mere allegations of fraud do not satisfy the PSLRA.  In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 958 (8th Cir. 2008). The Amended Complaint must "indicate why the alleged misstatements would have been false or misleading at the several points in time in which it is alleged they were made."  In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1083 (8th Cir. 2005); Elam v. Neidorff, 544 F.3d 921, 927 (8th Cir. 2008).

## A.    Plaintiffs Fail to Plead Misrepresentation with Particularity.

Plaintiffs assert that Voigt is liable under Section 10(b) and Rule 10b-5 because he made misrepresentations and omissions "knowing and intending that Plaintiffs would rely on those statements and representations in deciding to invest monies with Assured and/or

Hennessey through Defendant, and to sign the Jaguar subscription agreement." (Am. Compl. ¶¶ 143-144.) Plaintiffs do not identify "with particularity" the requisite "who, what, where, when and how" with respect to the false representations made by Voigt to render their claims plausible. (See Am. Compl. ¶¶ 146, 147(a) - (cc)). Instead, the Amended Complaint focuses on conclusory representations that lack any relationship with the causality underlying Plaintiffs' loss and fall well short of the stringent PSLRA pleading standards.

> 1.    **Voigt's alleged representations relating to Assured and Hennessey are not pled with particularity.**

Plaintiffs allege that Voigt made a number of misrepresentations to induce their investments. (See Am. Compl. ¶ 147 (a) - (cc)).  Most, if not all of the allegations in Paragraph 147(a) - (cc) are vague and conclusory, including the allegations in Paragraph 147(e, f, g, h, i, j, k, l, m, n, o, p, q, r, s, t, u, v, w and cc), which fail to identify with particularity the "who, what, where, when and how" necessary to render these claims plausible under the PSLRA or Fed. R. Civ. P. 9(b). Nor have Plaintiffs pled how or why these representations attributed to Voigt were false or fraudulent at the time made.  The misrepresentations attributed to Voigt amount to nothing more than allegations his representations were false in hindsight.  (See e.g., Am. Compl. ¶ 147(e, h, l, and s.)  This is insufficient under the PSLRA.  See Cerner Corp., 425 F.3d at 1083; Elam, 544 F.3d at 927.

Of the misrepresentations alleged by Plaintiffs, the only ones arguably sufficient under the heightened pleading standard are those set forth in Paragraph 147(a - d) of the Amended Complaint.    Plaintiffs have failed, however, to plead the materiality of those

misrepresentations with particularity.  Matrixx Initiatives, Inc., 131 S.Ct. at 1318 (Plaintiffs must establish the defendant made a statement that was "misleading as to a material fact.") The requirement is satisfied when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Matrixx Initiatives, Inc., at 1318.

Plaintiffs do not allege, with a substantial likelihood, they would not have invested in Assured and/or Hennessey had they known Voigt received a commission or finder's fee as a percentage of Plaintiffs' investments.  (Am. Compl. ¶ 147(c-d)).  Nor do Plaintiffs allege they would not have invested had Voigt not personally guaranteed their investments.  Rather, Plaintiffs generically assert that "taken separately or together," Voigt's alleged misrepresentations "misled and induced Plaintiffs into making investments they would not otherwise have made."  (Am. Compl. ¶ 149.)  No allegation is made that, absent such alleged representations, Plaintiffs would have viewed the risk of investment outweighed by the benefits and that they would not have invested. Plaintiffs' allegations, without more, are mere conclusions with no plausible foundation.

### 2.    Voigt's alleged representations regarding the Jaguar conversion are not pled with particularity.

Plaintiffs conclude that Voigt made misrepresentations relating to the conversion from Hennessey to Jaguar,  (see Am. Compl. ¶ 147(x, y, z, aa, and bb)), but have not pled those allegations with particularity.  Accordingly, Plaintiffs' claims based on those allegations are not plausible, especially in light of Plaintiffs' other allegations, and should be dismissed.

Plaintiffs attribute the following representations to Voigt regarding the Jaguar reorganization plan:

> x.    Defendant's representation that the Jaguar "reorganization" and "solution" could allow Hennessey's unsecured investors to recover or even exceed their losses; and

> y.    Defendant's representation that Plaintiffs would receive shares in Jaguar, a publicly traded entity with an initial capitalization of $10 million.

(Am. Compl. ¶ 147). Plaintiffs do not assert how these statements were fraudulent or why these statements were fraudulent at the time that they were made. In fact, Plaintiffs' other allegations lend credence to these statements allegedly made by Voigt.

In Paragraph 125, for example, Plaintiffs allege Gardner explained to Plaintiffs at the investor meeting on June 25, 2008 that the Jaguar reorganization plan "was their only opportunity to recover any assets," and that upon Plaintiffs' execution of the Jaguar subscription agreement, Plaintiffs "would receive shares in a publicly traded company with $10 million in financing. The shares would be valued at $4.00 per share and the number each investor received would correspond to the amount Hennessey owed them." (Am. Compl. ¶ 125.) Plaintiffs later allege "Jaguar had little to no assets and, upon information and belief, had only a small amount of financing from the Fund. It never had close to the $10 million in financing represented at the June 25, 2008 meeting and in the June 12 and July 2, 2007 letters. Jaguar also was never a publicly traded company and its shares have no value." (Am. Compl. ¶ 138.) Plaintiffs do not allege that Voigt knew the Jaguar reorganization plan was

a fraud, that Jaguar had little to no assets, or that Jaguar was never a publicly traded company.  In fact, and as set forth above, Voigt's representations to Plaintiffs regarding the Jaguar plan were confirmed by the representations made by Gardner at the investor meeting. Absent an allegation that Voigt knew that the Jaguar reorganization plan was fraudulent, that Jaguar had little to no assets, or that Jaguar was never a publicly traded company, Plaintiffs cannot state a claim for relief based on those alleged representations.

Similarly, Plaintiffs' claims based on Voigt's alleged representations regarding the Jaguar conversion are deficient.  Plaintiffs assert that they were induced to convert their Hennessey investments into Jaguar based upon the following representations:

> z.     Defendant's representation that signing the Jaguar subscription agreement was in Plaintiffs' best interests, and his omission of material fact that signing the subscription agreement would (arguably) immunize him and other associated with Hennessey lawsuits and other adverse actions;

> aa.    Defendant's representation that he would, and had, signed the Jaguar subscription agreement;

> bb.    Defendant's omission of material fact that he had not signed the Jaguar subscription agreement when he represented to Yary that he did not intend to factor his receipt of Jaguar stock into his Hennessey losses and that he was going to report 100% of those losses on his tax returns.

(Am. Compl. ¶ 147.)

Plaintiffs again fail to allege with particularity how these statements were fraudulent or why these statements were fraudulent at the time that they were made. No allegation is made about why when, or to whom Voigt represented that signing the Jaguar subscription

agreement was in Plaintiffs' best interests. While Voigt allegedly represented to Yary and Resnick that the Jaguar conversion was Plaintiffs' only opportunity to recover their losses, this is not the same as stating it was in Plaintiffs' "best interest."   Indeed, that alleged representation in Paragraph 147(z) is merely a conclusion that does not suffice under the PSLRA heightened pleading standard.

Plaintiffs' allegations regarding Voigt's intention to execute the Subscription Agreement also fail.  Plaintiffs assert Voigt told Yary he would sign the Jaguar Subscription Agreement.  (Am. Compl. ¶ 128.)  Later in the Amended Complaint Plaintiffs allege Voigt stated he "in fact had signed, the subscription agreement." (Am. Compl. ¶ 146.)  Nowhere in the Complaint, other than Paragraph 146, do Plaintiffs identify the particulars regarding Voigt's statement that had signed the Subscription Agreement.  Plaintiffs simply make that conclusion, which is unsupported and inconsistent with their other allegations.  Nor do Plaintiffs allege that Voigt made the same representation to Ken Resnick, Marion Resnick, or Irving Braverman. Accordingly, Ken Resnick, Marion Resnick, or Irving Braverman could not have relied upon such a representation in deciding to convert their investments to Jaguar and cannot proceed against Voigt on that basis.  These inconsistencies and deficiencies in the Amended Complaint render implausible Plaintiffs' claims that they were misled by Voigt relating to the Jaguar conversion.

**B.    Plaintiffs Fail to Plead Loss Causation Against Voigt.**

Plaintiffs Section 10(b) and Rule 10b-5 claims against Voigt must also be dismissed

because Plaintiffs have failed to plead loss causation.  A plaintiff must show the defendant's tortious conduct caused the plaintiff's losses to prevail in a tort action.  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008), citing W. Page Keeton et al., *Prosser & Keeton on Torts* § 41 (5th ed. 1984).  This requires plaintiffs to establish a causal connection between defendant's wrongful conduct and plaintiff's losses.  Id. at 549, citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

Causality in a securities case is determined by "transaction causation" and "loss causation".  Schaaf, at 549.  Transaction causation is shown by establishing defendant's fraud induced plaintiff to purchase the security.  Schaaf, at 549-550.  Plaintiffs must show that but for the misrepresentation, they would not have purchased the security.  Id.  Loss causation corresponds to the common law requirement of proximate cause and requires a plaintiff to prove "a causal connection between the material misrepresentations and the loss."  Id., quoting Dura, 544 U.S. at 342.  This requires Plaintiffs to establish that "the defendant's fraud – and not other events – [must have] caused the security's drop in price."  Id.[5]  Thus, Plaintiffs must show that their loss was foreseeable and caused by the materialization of the concealed risk.  Id.

---

[5]  Courts assess loss causation under "ordinary pleading rules."  Dura, 544 U.S. at 347.  Notwithstanding the fact that Fed. R. Civ. P. 8 applies to the loss causation element in a securities fraud case, Plaintiffs are still obligated to allege a facially plausible claim for loss causation under the pleading standards enunciated in Twombly, Iqbal, and Maatrix Initiatives, Inc.

### 1.   Plaintiffs failed to plead loss causation relating to their investments in Assured and Hennessey.

Plaintiffs do not assert that the misrepresentations by Voigt resulted in the loss of their investments. In fact, Plaintiffs offer nothing more than a tautology in the Amended Complaint on the cause of the alleged diminution in the value of investments with Assured, Hennessey, and subsequently Jaguar.  The Amended Complaint alleges those losses were caused by "Hennessey's increasing inability to satisfy its debt obligations." (Am. Compl. ¶ 108.) As Plaintiffs further assert, it was Hennessey, not Voigt, that caused the loss of Plaintiffs' investments:

> [Hennessey] was making interest payments to investors not with profits from mezzanine lending but with new principal investments.  Hennessey had become a Ponzi scheme.  Upon information and belief, Gardner and others also diverted investors' funds to finance their lavish lifestyles.

(Am. Compl. ¶ 108.)

Although Hennessey faced challenges due to a collapsing real estate market, a fact known by Plaintiffs, each Plaintiff was admittedly reassured by Hennessey's representations:

> Each of the Plaintiffs received a letter from Hennessey dated May 1, 2008 stating that Hennessey faced "challenges" resulting from the decline of the real estate market and near collapse of the credit markets.  However, the letter states that Hennessey has "made solid progress" in pursuing "workable solutions" to these challenges.  It further states that the mission and goal of Hennessey remains to provide "above market returns to its investors and that the "primary goal given the current market condition is to protect the future of Hennessey Financial and its current Investors."  Because of the failing real estate market, Plaintiffs were not surprised by the news that Hennessey was experiencing "challenges" – and they all had expected some notice to that

20

effect.  Yet, each was reassured by Hennessey's representations that there were workable solutions to these challenges, that those solutions were coming along well and that the company was still committed to paying the interest rates they were receiving.

(Am. Compl. ¶ 110.)

Absent from these allegations is any reference to Voigt.  Voigt is not alleged to have diverted investors' funds or been involved in Hennessey's collapse.  Nor is Voigt alleged to have controlled Hennessey or been involved in its investment management sufficient to establish loss causation.  In fact, as Plaintiffs assert, Voigt was concerned about the continued viability of Hennessey, wanted a solution to Hennessey's problems  "more than anyone" and acknowledged that "if Hennessey failed, all of [Plaintiffs'] investments could be lost."  (Am. Compl. ¶ 113.)

Nor can Plaintiffs set forth a plausible claim for loss causation when Voigt's pre-sale representations had no relationship, let alone a causal connection, with Plaintiffs' post-investment losses.  Based on Plaintiffs' own pleading, Voigt was only involved in the offering of the investments , which may arguably mount to transaction causation. (See Am. Compl. ¶ 149.)  But Plaintiffs have not plead that Voigt was involved in the management of Plaintiffs' investments, controlled the activities of Assured or Hennessey, or concealed Gardner's conversion of Plaintiffs' investments or Hennessey's Ponzi scheme.  (See Am. Compl. ¶ 108.[6]) As is evident from Plaintiffs' Amended Complaint, a collapsing real estate

---

[6]   Plaintiffs instead assert in Paragraph 108 that Voigt knew or should have known that "Hennessey was on the verge of being insolvent if not already insolvent."

market, Hennessey's fraud and failures, and Gardner's misrepresentations caused the loss of Plaintiffs' investments, not Voigt.

>    **2.    Plaintiffs failed to plead loss causation relating to the Jaguar conversion.**

Nor have Plaintiffs plausibly pled loss causation with respect to their conversion to Jaguar. In fact, Plaintiffs' assertion that they "relied on Defendants' representations that Hennessey had a 'solution' to Hennessey's financial problem that likely would protect their investments," (Am. Compl. ¶ 122) is belied by Plaintiffs' other allegations:

- Hennessey's alleged "solution" would be presented by Gardner, not Voigt, at a planned investor meeting.  (Am. Compl. ¶ 121.)

- Plaintiffs received correspondence from Hennessey, not Voigt, identifying the June 25, 2008 investor meeting to outline Hennessey's "a re-organization plan whereby our unsecured creditors will receive preferred shares in a publicly traded entity." (Am. Compl. ¶¶ 122-123.)

- At the investor meeting, Gardner, not Voigt, presented Hennessey's reorganization plan, informed Plaintiffs about the subscription agreements and share valuation, and stated that the new company would pay a dividend of approximately 2.5% of Plaintiffs' investment. (Am. Compl. ¶¶ 124-125.)

- Plaintiffs received a July 2, 2008 letter from Gardner, not Voigt, regarding the investor meeting and enclosing a subscription agreement for Jaguar.  (Am. Compl. ¶¶ 129-130.)

- Plaintiffs' allege that the reorganization plan presented by Gardner was

---

(Am. Compl. ¶ 108.)  Hennessey's insolvency, however, is unrelated to the allegations regarding Gardner and Hennessey's activity or Ponzi scheme.  Plaintiffs do not allege Voigt misrepresented Hennessey's solvency before Plaintiffs made each investment.  (<u>See</u> Am. Compl. ¶ 147.)

> not as represented: "Jaguar had little to not assets and, upon
> information and belief, had only a small amount of financing from the
> Fund.  It never had close to the $10 million in financing represented at
> the June 25, 2008 meeting and in the June 12 and July 2, 2008 letters.
> Jaguar also was never a publicly traded company and its shares have no
> value.  Although it initially made some a few small [sic] "dividend"
> payments, Jaguar was never a legitimate "solution" to the total loss of
> Plaintiffs' investments.  Rather, Jaguar was a fraudulent vehicle
> designed to release Hennessey from its Hennessey from its obligations
> to its investors . . . ." (Am. Compl. ¶ 138.)

Plaintiffs do not allege that Voigt misrepresented the reorganization plan or Jaguar conversion.  The only statement attributed to Voigt following the June 2008 investor meeting was Voigt's statement to Yary that the plan was the only opportunity to recover any losses and that he was going to sign the Subscription Agreement.  (Am. Compl. ¶ 128.)  Voigt did not send Plaintiffs any correspondence regarding the Hennessey reorganization, did not present at the investor meeting, did not explain the details of the reorganization to Plaintiffs, and did not make any representations regarding the contents of the Jaguar Subscription Agreement.

Further, Plaintiffs cannot establish loss causation with respect to their Jaguar conversion because Plaintiffs have sustained no losses.  As Plaintiffs have alleged, by June 2008, their investments in Hennessey had no value and the Jaguar conversion was "their only opportunity to recover any assets." (Am. Compl. ¶ 125.)  The only "other alternative was an unsatisfied judgment."  (Id.)  As a result, Plaintiffs converted their worthless investments from Hennessey to Jaguar.  The fact that the Jaguar stock also proved to be worthless confirms that Plaintiffs did not sustain any damages from that conversion.  Had Plaintiffs

remained in Hennessey they would be left in the same position that they currently find themselves and the same position in which Voigt finds himself - with a worthless investment in an entity with no value or assets.  Accordingly, Plaintiffs cannot set forth a plausible claim for loss causation which requires a dismissal of their Section 10(b) and Rule 10b-5 claims.

### C.       Plaintiffs Fail to Plead Scienter with Particularity.

Plaintiffs' Section 10(b) or Rule 10b-5 claims must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2); McAdams, 584 F.3d at 1113.  The standard is "scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" Tellabs, Inc. v. Makor Issues & Rights, LTd., 551 U.S. 308, 313 (2007).  To determine whether Plaintiffs have alleged facts sufficient to establish a "strong inference of scienter" this Court must weigh "plausible nonculpable explanations for the defendants conduct" against inferences favoring Plaintiffs' allegations.  Horizon Asset Mgmt, Inc., 580 F.3d at 761.  Although the inference of scienter need not be the "most plausible of competing inferences," it "must be more than merely reasonable or plausible - it must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Id. at 761; In re Ceridian Sec. Litig.,542 F.3d 240, 244 (8th Cir. 2008). This Court must dismiss the complaint if these requirements are not met.   Kushner v. Beverly Enters., Inc., 317 F.3d 820, 826 (8th Cir. 2003).

There are three methods to establish scienter: "(1) from facts demonstrating a "mental state embracing intent to deceive, manipulate or defraud"; (2) from conduct that rises to the

level of severe recklessness; or (3) from allegations of motive and opportunity." <u>Crowell</u>

<u>Trust</u>, 519 F.3d at 782.  Plaintiffs have failed to plead scienter relating to Voigt's alleged pre-

sale representation or representations concerning the Jaguar plan and conversion, under any

of these methods. Plaintiffs have not pled that Voigt had a "mental state embracing intent to

deceive, manipulate, or defraud," but have, in fact, alleged the opposite by highlighting the

investments losses that Voigt personally sustained in Assured and Hennessey.

Second, Plaintiffs not pled that Voigt had an "unusual and heightened motive"

sufficient to constitute scienter for their Section 10(b) and Rule 10b-5 claims.  With respect

to Voigt's alleged pre-sale representations, Plaintiffs allege, in part:

> • Defendant read and understood [Assured's PPM] and many others containing similar warnings regarding the high degree or risk associated with these investments.  Defendant knew about and understood the high degree of risk associated with investing with Assured.  (Am. Compl. ¶ 12.)

> • Defendant knew about and understood the high degree of risk associated with investing with Hennessey. (Am. Compl. ¶ 31.)

> • Defendant knew or should have known that Hennessey was on the verge of being insolvent if not already insolvent . . . . (Am. Compl. ¶ 108.)

But he allegations that Voigt "read and understood" Assured's PPM and the high degree of

risk associated with investing in Assured, knew about and understood the high degree or risk

associated with investing with Hennessey, and knew or should have known that Hennessey

was on the verge of being insolvent, are all conclusions that lack any plausible, factual

predicate.[7] Nor do these allegations create strong inference of scienter because Plaintiffs'

allegations waffle between intentional ("Defendant had actual knowledge that the aforesaid

statements and representations were untrue and misleading . . .") and negligent conduct

("Defendant knew or should have known . . . .") (See Am. Compl. ¶¶ 144 and 108.)

Nor have Plaintiffs adequately alleged that Voigt was severely reckless with respect

to his representations.  To demonstrate severe recklessness, a plaintiff must allege "highly

unreasonable omissions or misrepresentations amounting to an extreme departure from the

standards of ordinary care, and that present a danger of misleading buyers or sellers which

is either known to the defendant or is so obvious that the defendant must have been aware

of it."  Horizon Asset Mgmt, Inc., 580 F.3d at 766.  Plaintiffs fail to allege any basis to

plausibly conclude Voigt's conduct reached this level.  The Complaint lacks any facts that

Voigt knew about Hennessey's insolvency, the fact that Hennessey had become a Ponzi

scheme, or that Gardner was diverting investor's funds.  Plaintiffs assert it was that conduct

by Hennessey and Gardner that caused their loss, but fail to make any related plausible

scienter allegation against Voigt.

Finally, no compelling inference of scienter can be made from Plaintiffs' allegations

---

[7] For example, in Paragraph 106 of the Amended Complaint, Plaintiffs vaguely
assert that "Defendant, by April 2007 if not earlier, had seen charts and other documents
showing that Hennessey was experiencing significant losses and could fail," (Am.
Compl. ¶ 106) but do not identify what "chart and other documents" Voigt had seen and
provide no factual detail supporting such allegations.  Nor do Plaintiffs attribute such
losses with Voigt's involvement with Hennessey.

given the fact Voigt was an investor in Assured and Hennessey and lost in excess of $ 3.49 million dollars from those investments.  (Voigt Aff. Exs. A, B, C); see Tellabs, 551 U.S. at 323 ("in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences.") It is implausible that Voigt had the requisite mental state to conceal the fact that Hennessey had become a Ponzi scheme, or that Gardner was diverting investor's funds given his own, significant investments at stake.  Plaintiffs have not alleged any factual predicate to establish a strong inference of scienter in light of Voigt's own investment losses.

**D.     Plaintiffs Fail to Plead Control Person Liability with Particularity.**

Under Section 20(a) of the Exchange Act, a person who controls a party that commits a violation of securities laws may be held jointly and severally liable with the primary violator.  15 U.S.C. § 78t. To the extent that Plaintiffs assert Voigt is liable as a control person of Assured, Hennessey, or Jaguar, those claims are not pled with the requisite particularity and must fail.  (See e.g., Am. Compl. ¶ 150 ("Defendant is liable to Plaintiffs for each of the respective Plaintiffs' damages, as an individual who is an officer, director, employee or agent of, or associated with, such a 'person" and material [sic] aids the illegal sale, inducement, or issuance of the securities to Plaintiffs.")

To establish control person liability, Plaintiffs must establish that:

(i)      the alleged control person actually exercised control over the general operations of the primary violator; and

(ii)     the alleged control person possessed-but did not necessarily exercise-

27

the power to determine the specific acts or omissions upon which the underlying violation is predicated.

Farley v. Henson, 11 F.3d 827, 835 (8th Cir.1993).

The principal allegations, asserted by Plaintiffs in support of their control person claim, are that Voigt was "Chairman of the Board of Assured and a member of the Financial Advisory Board of Hennessey," that he "had access to and possessed confidential, financial, business and operational information regarding Hennessey . . . ," that he had "intimate knowledge of the investment activity and financial condition of Assured and Hennessey," that he "possessed detailed confidential information unavailable to Plaintiffs and other investors that clearly indicated that Hennessey was in serious financial trouble . . . ." (Am. Compl. ¶¶ 7, 26, 75, 103.) These allegations amount to nothing more than recitals of the control person elements, lack any plausible factual basis, and are deficient under Twombly and Iqbal. See Iqbal, at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" on a motion to dismiss). Plaintiffs have failed to plead any facts from which it can be inferred Voigt was a control person of the primary violators - Hennessey and Gardner. See Saunders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 485-86 (6th Cir. 1992)(failure to state claim absent allegation of actual participation in operation of corporation); Vacanti v. Sunset Financial Services, Inc., 2009 WL 792387, *5 (D. Neb. 2009)(Controlling person claim dismissed because Plaintiff failed to allege facts to support conclusory statements.)

Further, Plaintiffs' alleged control person claims against Voigt lack any factual

28

predicate to establish "control" as defined by the SEC.  See 17 C.F.R. § 230.405 (Control is "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities by contract or otherwise".)   The Amended Complaint does not allege Voigt actually exercised control over Assured or Hennessey in a manner commensurate with the SEC definition, nor that Voigt actually instructed, managed, or directed the investment activities or provided investment advice to Assured or Hennessey sufficient to constitute "control".  As a result of these pleading deficiencies, Plaintiffs have failed to state a claim for control person liability.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE MINNESOTA SECURITIES ACT.

In Count II of the Amended Complaint, Plaintiffs restate their fraud allegations of Count I, asserting the same conduct gives rise to liability under the Minnesota Securities Act, Minn. Stat. §§ 80A.01 and 80A.68[8].  Minn. Stat. § 80A.68 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1) to employ a device, scheme or artifice to defraud; (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made, in light of the circumstances under which it was made, not misleading; or (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon

---

[8]  Minn. Stat. § 80A.01 was repealed by Laws 2006, Chapter 196, which in part repealed §§ 80A.01 to 80A.19, and also enacted §§ 80A.40 to 80A.90, the Uniform Securities Act (2002), relating to the same subject matter.  Minn. Stat. § 80A.01 was replaced by Minn. Stat. § 80A.68.

another person.   The elements of a securities fraud claim under Minn. Stat. § 80A.68

(formerly Minn. Stat. § 80A.01) are "essentially the same" as a federal securities fraud claim

under Rule 10b-5.   Erickson v. Horing, 2001 WL 1640142, at *7 (D. Minn. 2001.)

Therefore, and for the reasons set forth above with respect to Plaintiffs' federal securities

fraud claims, Plaintiffs' Minnesota Securities Act claims against Voigt must be dismissed

for failure to state a claim.

If Plaintiffs' state securities fraud claims are not dismissed, certain of those claims are

barred by the applicable statute of limitations.   The statute of limitations on a fraud claim

under Minn. Stat. § 80A.76(b), other than for a violation of section Minn. Stat. § 80A.49,

expires two years after discovery of the facts constituting the violation or five years after the

violation.   Minn. Stat. § 80A.76(j)(2).   Plaintiffs allege Voigt made misrepresentations and

omissions with the intent to induce Plaintiffs to invest.   (Am. Compl. ¶ 158.)   To constitute

a fraudulent sale, such representations must have occurred before the purchase of the

securities.   Therefore, based upon the dates of Plaintiffs' investment, and the parties' Tolling

Agreement, Plaintiffs' Minnesota Securities Act claims arising from purchases before April

22, 2005, are time-barred and must be dismissed as set forth above. (See Am. Compl. ¶ 5.)

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD OR NEGLIGENT MISREPRESENTATION.

In Count III, Plaintiffs assert claims for fraud or negligent misrepresentation.   To state

a claim for fraudulent misrepresentation, a plaintiff must establish: (1) there was a false

representation by a party of a past or existing material fact susceptible of knowledge; (2)

made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) the representation caused the other party to act in reliance thereon; and (5) the party suffered pecuniary damage as a result of the reliance. Hoyt Props., Inc. v. Prod. Resource Group, LLC, 736 N.W.2d 313, 318 (Minn. 2007). These elements must be pled with particularity, and the material facts constituting fraud must be alleged.  Fed. R. Civ. P. 9(b); Parrish v. Peoples, 214 Minn. 589, 9 N.W.2d 225 (1943).

To state a claim for negligent misrepresentation a plaintiff must establish: (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury, and (4) damages.  Flynn v. Am. Home Prods. Corp., 627 N.W.2d 342, 350-51 (Minn. Ct. App. 2001).  Plaintiffs' negligent misrepresentation claims must be facially plausible under the pleading standards set forth in Twombly and Iqbal.

Plaintiffs fail to state a claim for fraud or negligent representation for the reasons previously set forth with respect to Plaintiffs' securities fraud claims.  Plaintiffs have failed to plausibly allege that the statements attributed to Voigt concerned material facts that, if not made, would have prevented Plaintiffs from investing in the funds.  Most, if not all, of the allegations attributed to Voigt concern the misrepresentation of future events or statements of opinion, neither of which are sufficient in a common law fraud claim.  See Davis v. Midwest Discount Securities, Inc., 439 N.W.2d 383, 387 (Minn. Ct. App. 1989)(Assurances

about future events cannot form the basis of a claim for fraudulent misrepresentation); Minnesota Forest Products, Inc. v. Ligna Machinery, Inc., 17 F.Supp.2d 892, 909 (D. Minn. 1998) (citing cases holding representations about future events, statements of opinion or puffing, are not actionable as misrepresentations). Plaintiffs have also failed to adequately allege that Voigt knew his alleged representations were false when made.  See In re Buffets, Inc. Securities Litig., 906 F.Supp. 1293, 1300 (D. Minn. 1995)(A complaint must set forth particular allegations that a defendant's representations were false when made.)  Plaintiffs' allegations regarding Voigt's state of mind amount do not establish the representations were false when made or were made with fraudulent intent.

Finally, Plaintiffs' failure to allege any proximate relationship between Voigt's representations and their losses preclude Plaintiffs from stating a claim for relief.  The proximate cause analysis in connection with a negligence claim is no different than that "loss causation" analysis for the Section 10(b) claim.  See Schaaf, 517 F.3d at 550 (loss causation "corresponds to the common law's requirement of proximate causation.") Plaintiffs failure to plausibly allege loss causation with respect to Voigt's allegations is, therefore, equally dispositive of Plaintiffs' fraud and negligent misrepresentation claims and should compel a dismissal of the same.

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSTRUCTIVE FRAUD OR BREACH OF FIDUCIARY DUTY.

Plaintiffs' claim for constructive fraud or breach of fiduciary duty in Count IV of the Amended Complaint must be dismissed for failing to state a claim.  Plaintiffs assert, in

conclusory fashion, that Voigt "had a fiduciary relationship with and duty of care to Plaintiffs." (Am. Compl. ¶ 169.) However, the only factual bases alleged by Plaintiffs to establish a fiduciary relationship is Voigt's investment experience and "close friendship" with Ken Resnick, Marion Resnick and Ron Yary. (Id.) Plaintiffs have failed to allege any facts that plausibly establish a fiduciary relationship with Voigt as is necessary in a constructive fraud or breach of fiduciary duty claim. See Perl v. St. Paul Fire and Marine Ins. Co., 345 N.W.2d 209, 213 (Minn. 1984)("Constructive fraud reposes exclusively in the context of fiduciary obligations and is simply a characterization of a breach of such.")

A fiduciary relationship is characterized under Minnesota law by a "fiduciary" who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence. Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985). Such a relationship transcends the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith. Carlson v. Sala Architects, Inc., 732 N.W.2d 324, 330 (Minn. Ct. App. 2007). The fact that Voigt had existing friendships with Ken Resnick and Ron Yary does not render him a fiduciary with respect to their investments. Nor does the fact Voigt had broad investment experience suffice to establish a fiduciary relationship under Minnesota law. See Carlson, at 330 (holding that the relationship of an architect and client is not a fiduciary one), citing D.A.B. v. Brown, 570 N.W.2d 168, 171 (Minn. Ct. App. 1997)(holding physician-patient relationship is not a fiduciary relationship); see also Brent A. Olson, 20A2 Minn. Prac.

Business Law Deskbook § 34:82 (West 2010)(identifying traditional fiduciary relationships.) Because Plaintiffs have failed to allege any plausible basis to establish a fiduciary relationship with Voigt, Count IV must be dismissed.

## VIII.  CERTAIN PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

In Count V of the Amended Complaint, Plaintiffs allege that Voigt personally guaranteed their investments.  These claims must be dismissed for failing to state a claim and pursuant to the application of Minnesota's Statute of Frauds, Minn. Stat. § 513.01.

Accepting Plaintiffs' allegations that Voigt issued written guarantees to Ken Resnick and Marion Resnick for their investments in June 2002, the only actionable claims those Plaintiffs have against Voigt with respect to their June 2002 investments sounds in contract law based on the alleged written guarantees.   (See Am. Compl. ¶¶ 40, 49.)  However, Plaintiffs' breach of contract claims based on the alleged written guarantees of their 2002 investments are ultimately implausible.  Plaintiffs are compelled, under Twombly and Iqbal, to identify the terms of the written guarantees issued by Voigt relating to the 2002 investments, or attach those guarantees to the Amended Complaint.  To simply assert that there exists written guarantees, without more, is a conclusion without plausible foundation and should compel a dismissal of Plaintiffs' breach of contract claims on that basis.

The converse is also true.  Plaintiffs have no cognizable claim for breach of contract against Voigt unless the investment underlying that particular claim was personally guaranteed by Voigt in writing.  If Voigt's alleged guarantee were not reduced to writing,

those claims are barred by Minnesota's Statute of Frauds:

> No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party charged therewith: . . . (1) every agreement that by its terms is not to be performed within one year from the making thereof; (2) every special promise to answer for the debt, default or doings of another.

Minn. Stat. § 513.01.

The only written guarantees received by Plaintiffs concerned the June 2002 investments of Ken Resnick and Marion Resnick. None of the other investments made by Ken Resnick or Marion Resnick were guaranteed in writing. Nor were any of the investments made by Ron Yary or Irving Braverman guaranteed in writing by Voigt. Accordingly, and pursuant to the statute of frauds, Plaintiffs cannot prevail on their breach of contract claims based on Voigt's alleged oral guarantees and such claims should be dismissed for failing to state a claim. See Gen. Mktg. Serv., Inc. v. Am. Motorsports, Inc., 393 F. Supp.2d 901, 905-06 (2005)(holding that writing is required to substantiate claim based on personal guarantee), citing Esselman v. Prod. Credit Ass'n of St. Cloud, 380 N.W.2d 183, 187 (Minn Ct. App. 1986).

## IX. PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE OR PROMISSORY ESTOPPEL.

Plaintiffs' claims for equitable and promissory estoppel set forth in Count VI of the Amended Complaint must be dismissed for failing to state a claim. "Under promissory estoppel, a promise which is expected to induce definite action by the promisee, and does

induce the action, is binding if injustice can be avoided only by enforcing the promise." Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn. 1992). Promissory estoppel is used to "impl[y] a contract in law where none exists in fact." Gen. Mktg. Serv., Inc., 393 F. Supp.2d at 908.

Plaintiffs assert that Voigt made written and oral guarantees of Plaintiffs' investments in Assured and Hennessey and that it is these guarantees upon which Plaintiffs' contract claims are founded. It is the same alleged guarantees upon which Plaintiffs predicate their promissory and equitable estoppel claims. (Am. Compl. ¶ 182.) Because Plaintiffs have alleged the existence of a contract based on Voigt's alleged guarantees, they cannot also state a claim for promissory estoppel, which arises upon the non-existence of a contract.

The fact that certain of Plaintiffs' contract claims are barred by Minnesota's statute of frauds does not affect the analysis. In Del Hayes & Sons, Inc. v. Mitchell, 304 Minn. 275, 230 N.W.2d 588, 594 (1975), the Minnesota Supreme Court held that promissory estoppel was not available as a cause of action to take an oral contract out of the statute of frauds. See Casazza v. Kiser, 313 F.3d 414, 421 (8th Cir. 2002)(analyzing Del Hayes & Sons, Inc. and affirming district court dismissal of promissory estoppel claim because claim rested on same promise that formed breach of contract claim barred by the statute of frauds.)[9] Plaintiffs,

---

[9] Exceptions to this rule have been noted, but do not apply in this instance. See Casazza, 313 F.3d at 421, citing Berg v. Carlstrom, 347 N.W.2d 809, 812 (Minn. 1984) and Norwest Bank v. Midwestern Mach. Co., 481 N.W.2d 875, 880 (Minn. Ct. App. 1992).

therefore, cannot proceed on a claim for promissory or equitable estoppel as an end-run around the statute of frauds and such claims in Count VI should be dismissed.

## X.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs fail to state a claim for unjust enrichment in Count VII of the Amended Complaint.  To establish a claim for unjust enrichment, Plaintiffs must establish: (1) a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit where it would be inequitable to retain it without paying for it.  Acton Constr. Co. v. State, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986), *pet. for review denied*, (Minn. 1986).  A claim for unjust enrichment does not lie simply because one party benefits from the actions of another. Rather, Plaintiffs must allege "that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981); Servicemaster of St. Cloud v. GAB Bus. Servs. Inc., 544 N.W.2d 302, 306 (Minn. 1996).  A party is not unjustly enriched simply when he receives a value to which he is entitled under a contract or otherwise.  Schaaf, 517 F.3d at 554.

Plaintiffs assert Voigt has been unjustly enriched by "fraud, false pretenses, false promises, misrepresentations, misleading statement and deceptions."  (Am. Compl. ¶¶ 184.) Plaintiffs further allege Voigt "knowingly received commissions or finder's fees for Plaintiffs' investments and reinvestments with Defendant, Assured and Hennessey and received interest payments and repayments of loans, profit distributions and other pecuniary

37

benefits from the companies in which Defendant induced Plaintiffs to invest." (Id.)

Plaintiffs fail to allege, however, how or why those pecuniary benefits are illegal or unlawful. Plaintiffs do not assert why Voigt was not entitled to receive commissions or finder's fees. Nor have Plaintiffs alleged why other benefits Voigt may have received, such as profit distributions or interest payments, are illegal or unlawful. As pled, Plaintiffs' unjust enrichment claims are predicated solely on a finding that Voigt's representations were fraudulent. (See Am. Compl. ¶¶ 184.) Because Plaintiffs cannot prevail on any of their fraud claims, whether securities fraud claims or common law fraud claims, for the reasons previously set forth, they also cannot prevail on their unjust enrichment claims, which should be dismissed for failure to state a claim.

## CONCLUSION

Defendant Stuart A. Voigt respectfully requests that his Motion to Dismiss be granted and that Plaintiffs' Amended Complaint be dismissed with prejudice.

LOMMEN, ABDO, COLE, KING & STAGEBERG, P.A.

Dated:   May 25, 2011   BY  /s/Bryan R. Feldhaus
                                              Phillip A. Cole, I.D. No. 17802
                                              Bryan R. Feldhaus, I.D. No. 0386677
                                              Attorneys for Defendant Stuart A. Voigt
                                              2000 IDS Center
                                              80 South 8th Street
                                              Minneapolis, MN  55402
                                              (612) 339-8131
                                              FAX: (612) 339-8064