UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ron Yary; Kenneth D. Resnick and Marion L.
Resnick, individually and as trustees of the
Marion L. Resnick Revocable Trust created
on September 7, 1995; and Irving Braverman,

        Plaintiffs,

v.                                                                                         Civil No. 11-694 (JNE/FLN)
                                                                       ORDER
Stuart A. Voigt,

        Defendant.

---

Daniel M. Scott, Esq., and Kevin M. Magnuson, Esq., Kelley, Wolter & Scott, P.A., appeared for Plaintiffs.

Phillip A. Cole, Esq., and Bryan R. Feldhaus, Esq., Lommen, Abdo, Cole, King & Stageberg, P.A., appeared for Defendant.

---

      Asserting claims under the Securities Exchange Act of 1934 and the Minnesota Securities Act, Ron Yary, Kenneth Resnick, Marion Resnick, and Irving Braverman (collectively, Plaintiffs) brought this action against Stuart Voigt. They also asserted claims of fraud and negligent misrepresentation, constructive fraud and breach of fiduciary duty, breach of contract, equitable and promissory estoppel, and unjust enrichment. The case is before the Court on Voigt's Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons set forth below, the Court grants in part and denies in part the motion.

1

## I.     BACKGROUND[1]

In 1992 or 1993, Voigt began lending money to Jeffrey Gardner for individual real estate transactions. In 1998, Gardner organized Assured Financial, LLC (Assured), whose business plan indicated that Assured would provide financing to companies engaged in residential building construction and land development. Voigt was chairman of Assured's board.

Kenneth Resnick and Voigt have been friends since 1973. In 2002, Voigt informed Kenneth Resnick of an investment opportunity with Assured. After subsequent discussions with Voigt, Kenneth Resnick agreed to invest in Assured. In June 2002, Kenneth Resnick wired funds to Assured. In exchange, he received a 2-year promissory note from Assured and a personal guarantee that Voigt had signed.

Voigt and Marion Resnick, Kenneth Resnick's mother, were also friends. In May or June 2002, Voigt agreed to review Marion Resnick's investment portfolio and to advise her as to whether it was properly invested. He advised her to invest in Assured. In June 2002, Marion Resnick wired funds to Assured. In exchange, she received a 2-year promissory note and a personal guarantee that Voigt had signed. Later, in 2003 or 2004, Marion Resnick invested additional funds in Assured.

In September 2004, Kenneth Resnick and Marion Resnick received letters that informed them that they could either liquidate their investments in Assured or transfer their investments to Hennessey Financial, LLC (Hennessey). Gardner organized Hennessey in 1999, and the company engaged in mezzanine financing.[2] Voigt was on its financial advisory board. Kenneth

---

[1]     The Background summarizes the Amended Complaint's allegations. For present purposes, the Court accepts them as true. *See Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011).

[2]     According to Plaintiffs, "[a] mezzanine real estate loan is a loan in which the lender's security interest in the real estate collateralizing the loan is subordinate to a more senior lender."

Resnick asked whether he and his mother should transfer their Assured investments to Hennessey, and Voigt advised him that they should. Marion Resnick transferred her Assured investment to Hennessey, and she received a 2-year promissory note dated October 1, 2004, from Hennessey. She made additional investments in Hennessey in November 2004, late 2005, and 2007. Kenneth Resnick also transferred his Assured investment to Hennessey. He received a 2-year promissory note dated November 1, 2004, from Hennessey. He made additional investments in Hennessey in late 2005, 2006, and 2007. Voigt repeatedly told Kenneth Resnick and Marion Resnick that their investments in Assured and Hennessey were safe and secure.

Voigt and Yary have been friends since 1970. In the summer of 2003, Yary talked to Kenneth Resnick, who mentioned his investment in Assured through Voigt. Within two months, Yary called Voigt and asked about investing with Voigt. Voigt solicited Yary to invest in Hennessey in several telephone conversations between August 2003 and April 2004. Voigt agreed to personally guarantee Yary's investment. On January 27, 2004, Yary sent a check to Hennessey. In exchange, he received a 5-year debenture dated January 28, 2004. Later, Yary received financial disclosures from Voigt, but Yary never received an executed personal guarantee from Voigt. Voigt told Yary that Hennessey was a very safe investment.

Braverman has been a friend of Marion Resnick for more than 50 years. In the fall of 2006, he learned from her about her and her son's investments. Later, Braverman asked Kenneth Resnick to speak to Voigt about the possibility of investing in Hennessey. Kenneth Resnick called Voigt, who indicated that Braverman could invest in Hennessey. In early September 2006, Braverman met Voigt, Gardner, and an employee of Hennessey. Gardner and the employee gave a sales presentation, Voigt indicated that he would "back up" Braverman's investment, and Voigt told Braverman not to worry about a warning in a private placement

3

memorandum that Braverman had received from Gardner and the employee. Later that month, Braverman invested funds in Hennessey. In exchange, he received a 2-year subordinated debenture. The next month, Braverman invested additional funds, and he received a superseding 2-year subordinated debenture. Voigt told Braverman that an investment in Hennessey was safe and secure.

By April 2007, Voigt had seen documents that indicated Hennessey was experiencing significant losses and could fail. By late 2007, Hennessey was experiencing severe financial difficulties. By 2008, Hennessey was making interest payments to investors not from profits from mezzanine lending but from new principal investments.

Plaintiffs received letters from Hennessey dated May 1, 2008. The letters indicated that Hennessey faced challenges from the decline of the real estate market and the near collapse of the credit markets, that Hennessey had made progress in pursuing solutions to the challenges, that Hennessey's goal remained above market returns for its investors, and that Hennessey's primary goal, given market conditions, was to protect the future of Hennessey and its investors.

Plaintiffs received letters dated May 14, 2008, from Hennessey. The letters indicated that Hennessey's senior lender had stopped all investor payments and accruals as of May 1, was discontinuing financing, and was seizing Hennessey's assets. The letter indicated that Gardner continued to look for refinancing solutions and that all investments would be lost if Gardner's efforts to obtain additional financing for Hennessey proved unsuccessful.

Upon receiving the May 14 letter, Kenneth Resnick called Voigt about the investments he and his mother had made. Voigt stated that Hennessey was developing a plan to avoid significant losses to their investments. In the following few weeks, Kenneth Resnick talked to

4

Voigt on a daily basis. Voigt reassured Kenneth Resnick that a plan was being developed that would prevent them from losing their investments.

Braverman's son contacted Voigt immediately after Braverman received the May 14 letter. The son demanded that Voigt honor his personal guarantee of Braverman's investment. Voigt denied personally guaranteeing the investment.

Marion Resnick called Voigt after receiving the May 14 letter. Voigt told her that a plan was being developed that would keep her investment safe.

Yary contacted Voigt after receiving the May 14 letter. Voigt stated that he stood to lose a substantial investment and that he was in the same position as Yary and the other Plaintiffs. Voigt reassured Yary that a plan was being developed that would prevent the loss of their investments.

Plaintiffs received letters dated June 6, 2008. The letters stated that Hennessey would be dissolved and that no payments to unsecured creditors would be made. The letter also mentioned a reorganization plan in which unsecured creditors will receive preferred shares in a publicly traded entity.

After receiving the June 6 letter, Kenneth Resnick told Voigt that they needed an attorney to look out for their life savings as the reorganization plan was being developed. Voigt responded that a lawyer, Todd Duckson, was negotiating with Hennessey's senior lender, that Duckson was a fine lawyer, and that Duckson was looking out for the interests of investors like them. Voigt stated that he had recently talked to Duckson for three hours about the solution. Kenneth Resnick conveyed Voigt's assurances to Marion Resnick and Braverman.

A day or two later, Voigt told Kenneth Resnick that he had talked to Duckson. Voigt mentioned an investor meeting at which Gardner would present to investors the solution to

Hennessey's financial problem. Voigt stated that the plan involved putting $10 million into a public company and investors receiving stock valued at $4.00 to $4.50 per share.

Plaintiffs received letters dated June 12, 2008. The letters announced a meeting scheduled to take place on June 25, 2008, when a reorganization plan would be presented. The plan anticipated unsecured creditors receiving preferred shares in a publicly traded entity with initial capital of $10 million. The plan announced in the June 12 letter was essentially the same as the plan that Voigt had recently described to Kenneth Resnick.

Kenneth Resnick personally attended the June 25 meeting. Marion Resnick listened to the meeting via telephone. Yary listened and watched a presentation via the Internet. At the meeting, Gardner presented the reorganization plan and informed investors that, upon execution of a subscription agreement, they would receive shares in a publicly traded company with $10 million in financing. The shares would be valued at $4.00 per share, the number of shares received by each investor would correspond to the amount that Hennessey owed the investor, and the new company would pay a dividend of approximately 2.5% of each investor's investment. Gardner stated that this plan was the only opportunity to recover any assets and that the alternative was an unsatisfied judgment.

After the June 25 meeting, Yary asked Voigt whether he should sign the subscription agreement, Voigt advised Yary to sign it, and Yary did so. Kenneth Resnick also asked Voigt whether he and his mother should sign the agreement. Voigt told him that the agreement represented the only chance of recovery. Kenneth Resnick and Marion Resnick signed the agreement. Braverman also signed the agreement. The agreement included a release of Hennessey and its affiliates from claims related to the prior relationship with the subscriber.

The new company in which Plaintiffs received shares, Jaguar Financial Corporation, had little to no assets. Its financing never approached the figure, $10 million, stated at the June 25 meeting. It was never a publicly traded company, and its shares have no value.

## II.     DISCUSSION

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court accepts the facts alleged in the complaint as true and grants all reasonable inferences in favor of the plaintiff. *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

The court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Asserting that they are embraced by the pleadings, Voigt submitted copies of the Jaguar Financial subscription agreement and Schedule D to his income tax returns from 2007 to 2009 in support of his motion to dismiss. The subscription agreement is embraced by the Amended Complaint; the schedules are not. The Court declines to consider the schedules. *See* Fed. R. Civ. P. 12(d); *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged

7

in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (internal quotation marks omitted)).

**A.      Release**

Voigt asserts that Plaintiffs released all claims against Hennessey and its affiliated parties, including Voigt, pursuant to the release contained in the Jaguar Financial subscription agreement. Release is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Nevertheless, it may provide the basis for a dismissal pursuant to Rule 12(b)(6) under certain circumstances. *Citibank Global Mkts., Inc. v. Rodríguez Santana*, 573 F.3d 17, 23 (1st Cir. 2009) ("Release is an affirmative defense, and such a defense will support a motion to dismiss only where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude." (citations omitted)); *cf. Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008) ("If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)."). *But see Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) ("A motion to dismiss was improper since release is an affirmative defense, and the existence of a defense does not undercut the adequacy of the claim." (citation omitted)). Plaintiffs argue that they were defrauded by executing the Jaguar Financial subscription agreement. Without expressing an opinion as to the validity of the release in the Jaguar Financial subscription agreement, the Court concludes that release is not a proper basis for a dismissal under Rule 12(b)(6) in this case.

**B.      Count I – Securities Exchange Act and Rule 10b-5**

In Count I, Plaintiffs claim that Voigt violated section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Under section 10(b), it is

8

unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Rule 10b-5 implements this provision by making it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." To prevail on a claim that a defendant made material misrepresentations or omissions in violation of section 10(b) and Rule 10b-5, a plaintiff "must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

    1.    *28 U.S.C. § 1658(b)(2)*

Citing 28 U.S.C. § 1658(b)(2), Voigt asserts that part of Count I is untimely. Section 1658(b) states:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.

The parties executed a tolling agreement on April 22, 2010. Voigt contends that the claims of Plaintiffs who bought securities before April 22, 2005, should be dismissed. Specifically, Voigt identifies the following purchases that took place before April 22, 2005: Kenneth Resnick's

9

investments in Assured and initial investment in Hennessey, Marion Resnick's investments in Assured and initial investment in Hennessey, and Yary's investment in Hennessey.

Plaintiffs respond that they purchased the securities giving rise to their claims well within the 5-year period.  In support, they state that Kenneth Resnick and Marion Resnick reinvested the principal from previous investments and added new principal in new debt instruments after April 22, 2005.  Plaintiffs also state that they converted their investments in Hennessey to shares of Jaguar Financial in July 2008.

Setting forth "an unqualified bar on actions instituted '5 years after such violation,'" § 1658(b)(2) gives "defendants total repose after five years."  *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010); *see McCann v. Hy-Vee, Inc.*, No. 11-1459, 2011 WL 5924414, at *6 (7th Cir. Nov. 22, 2011); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199-200 (3d Cir. 2007).  To the extent Count I is based on misrepresentations or omissions made in connection with the purchase of securities before April 22, 2005, the claim is untimely.  The Court dismisses Count I in part.

*2. Misrepresentations or omissions with particularity*

Voigt contends that Count I should be dismissed because Plaintiffs failed to plead misrepresentations or omissions with particularity as required by the Private Securities Litigation Reform Act (PSLRA).  "The PSLRA imposes a heightened pleading standard in cases alleging securities fraud."  *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010).  Under the PSLRA, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *see Detroit Gen. Retirement Sys. v.*

*Medtronic, Inc.*, 621 F.3d 800, 805 (8th Cir. 2010). Pointing to a small subset of the Amended Complaint's paragraphs, Voigt contends that Plaintiffs failed to articulate the requisite "who, what, when, where, and how" of the alleged misrepresentations and omissions. Read in its entirety, the Amended Complaint does not lack the requisite particularity.

    *3.    Loss causation*

Voigt asserts that Count I should be dismissed because Plaintiffs failed to plead loss causation. "To adequately plead loss causation, the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009). "The plaintiff must show 'that the loss was foreseeable and that the loss was caused by the materialization of the concealed risk.'" *Id.* (quoting *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008)).

Voigt asserts that Plaintiffs failed to plead loss causation with respect to their investments in Hennessey. "There are several ways in which a plaintiff might go about proving loss causation. . . . [We have] suggest[ed] that loss causation might be shown if a broker falsely assures the plaintiff that a particular investment is 'risk-free.'" *Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 995 (7th Cir. 2007); *see Bastian v. Petren Res. Corp.*, 892 F.2d 680, 685-86 (7th Cir. 1990); *Bruschi v. Brown*, 876 F.2d 1526, 1531 (11th Cir. 1989). According to the Amended Complaint, Voigt repeatedly assured Plaintiffs of the safety and security of the investments in Hennessey, the investments in Hennessey were actually subject to a high degree of risk, and Voigt failed to inform Plaintiffs of Hennessey's financial deterioration. The Court rejects Voigt's argument that Plaintiffs failed to plead loss causation with respect to their Hennessey investments.

Voigt also contends that Plaintiffs failed to plead loss causation with respect to their conversion to shares of Jaguar Financial. According to the Amended Complaint, Voigt told Plaintiffs that the solution to Hennessey's financial problems involved conversion into shares of a company with $10 million in financing and that the plan was their only opportunity to recover some of their losses. The company never had close to the amount of financing represented, and the shares of Jaguar Financial have no value. The Court concludes that Plaintiffs have sufficiently alleged loss causation with respect to their conversion to shares of Jaguar Financial.

Finally, Voigt contends that Plaintiffs did not experience a loss by converting their investments in Hennessey to shares of Jaguar Financial because the investments in Hennessey and the shares of Jaguar Financial were worthless. In support, Voigt points to Plaintiffs' allegation that Gardner stated at the June 25 meeting that conversion to shares of Jaguar Financial was the only opportunity to recover any assets and that the alternative was an unsatisfied judgment. Nevertheless, Plaintiffs also alleged that Voigt, who did not execute the subscription agreement to convert his investment in Hennessey to shares of Jaguar Financial, did not lose his entire investment in Hennessey. Drawing all reasonable inferences in Plaintiffs' favor, the Court rejects Voigt's assertion that Plaintiffs failed to allege a loss in connection with their conversion to shares of Jaguar Financial.

   4.  *Scienter with particularity*

Voigt maintains that Plaintiffs failed to plead scienter with particularity. Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see Lustgraaf*, 619 F.3d at 873. "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets

that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* at 323. The Supreme Court explained:

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences." Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 323-24 (citations omitted); *see Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1029 (8th Cir. 2011). "Scienter can be established in three ways: (1) from facts demonstrating a mental state embracing an intent to deceive, manipulate, or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity." *Detroit Gen. Retirement Sys.*, 621 F.3d at 808 (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).

Voigt contends that Plaintiffs failed to allege facts that give rise to a strong inference of scienter. He notes that he personally sustained losses in Assured and Hennessey, and he asserts that Plaintiffs' allegations are implausible. Plaintiffs respond that Voigt repeatedly lied to them about the safety of investing in Assured and Hennessey, that he encouraged elderly, unsophisticated investors of limited means to concentrate their investments in extremely risky investments, and that he lied about receiving a commission on Yary's investment. Reading the Amended Complaint in its entirety and acknowledging its allegations regarding the losses

13

sustained by Voigt, the Court concludes that Plaintiffs have alleged facts that give rise to a strong inference of scienter.

     *5.*     *Control person*

Section 20(a) of the Securities Exchange Act "provides for liability of those who, subject to certain defenses, 'directly or indirectly' control a primary violator of the federal securities laws." *Lustgraaf*, 619 F.3d at 873. To the extent Plaintiffs assert a claim against him as a control person, Voigt contends that Plaintiffs failed to adequately plead the claim. Plaintiffs do not respond to this argument. The Court dismisses Count I to the extent Plaintiffs assert a claim against Voigt as a control person. *See id.* at 873-75.

**C.**     **Count II – Minnesota Securities Act**

In Count II, Plaintiffs assert that Voigt violated the Minnesota Securities Act. Voigt contends that Count II should be dismissed for the same reasons that Count I should be dismissed. Opposing Voigt's motion to dismiss Count II, Plaintiffs incorporate their arguments raised in connection with Count I. For the reasons set forth above, the Court dismisses in part Count II. *See Sailors v. N. States Power Co.*, 4 F.3d 610, 614 n.5 (8th Cir. 1993) ("As to Sailors' claims under the Minnesota Securities Act, the parties agree that we are bound by our decision on the federal claims." (citation omitted)).

**D.**     **Count III – Fraud and negligent misrepresentation**

Plaintiffs allege claims of fraud and negligent misrepresentation in Count III. To establish common law fraud, a plaintiff must prove:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011). "Where a representation regarding a future event is alleged . . . an additional element of proof is that the party making the representation had no intention of performing when the promise was made." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). A person makes a negligent misrepresentation when:

> (1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009). Claims of fraud and negligent misrepresentation are subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010). Voigt argues that Count III should be dismissed because Plaintiffs failed to plead material misrepresentations on which they relied, Plaintiffs failed to adequately allege Voigt knew his alleged misrepresentations were false when made, and Plaintiffs failed to allege any proximate relationship between his alleged misrepresentations and their losses. Having reviewed the Amended Complaint, the Court concludes that Plaintiffs have adequately alleged claims of fraud and negligent misrepresentation. The Court denies Voigt's motion to dismiss with respect to Count III.

**E.     Count IV – Constructive fraud and breach of fiduciary duty**

Count IV is a claim of constructive fraud and breach of fiduciary duty. Voigt contends that Count IV should be dismissed because Plaintiffs failed to allege that he had a fiduciary relationship with them. Plaintiffs respond that Voigt "had a 'confidential relationship' with Plaintiffs Marion and Ken Resnick and Irv Braverman."

"Constructive fraud is, by definition, not actual fraud but conduct that the law treats as fraud, irrespective of the actor's intent or motive.  Constructive fraud reposes exclusively in the context of fiduciary obligations and is simply a characterization of a breach of such a duty." *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 213 (Minn. 1984) (internal quotation marks omitted).  "A fiduciary relationship exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.'" *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (quoting *Stark v. Equitable Life Assurance Soc'y*, 285 N.W. 466, 470 (Minn. 1939)).  "Such a relationship transcends the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith and yet is not classified as 'fiduciary.'" *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007).  Although "friendship alone does not constitute a confidential relationship, friendship is one factor that may be considered." *Norlander v. Cronk*, 221 N.W.2d 108, 111 (Minn. 1974); *see Hope v. Klabal*, 457 F.3d 784, 791 (8th Cir. 2006) ("[A] fiduciary relationship is not established under Minnesota law in the context of commercial transactions simply by a long acquaintance between the parties or by the plaintiff having faith and confidence in the defendant where the plaintiff should have known the defendant was representing an adverse interest.").  "The existence of a fiduciary relationship is a question of fact." *Toombs*, 361 N.W.2d at 809.  "[W]hile a relationship might not be fiduciary per se, the facts of the case might create such a relationship." *Carlson*, 732 N.W.2d at 331.  Accepting as true the Amended Complaint's allegations, the Court concludes that Plaintiffs have adequately alleged that Voigt had fiduciary relationships with Marion Resnick, Kenneth Resnick, and Braverman.  Plaintiffs

16

failed to sufficiently allege that Voigt had a fiduciary relationship with Yary. Count IV is dismissed to the extent it is asserted by Yary.

**F.    Counts V and VI – Breach of contract, and equitable and promissory estoppel**

Voigt contends that Plaintiffs' claims of breach of contract should be dismissed because Kenneth Resnick's and Marion Resnick's claims based on Voigt's guarantees executed in 2002 are implausible. Voigt asserts that Kenneth Resnick and Marion Resnick failed to identify the terms of the guarantees and that they failed to attach the guarantees to the Amended Complaint. The Court rejects Voigt's contention that the claims are implausible. The Amended Complaint adequately alleges that Voigt executed personal guarantees, that Kenneth Resnick and Marion Resnick sustained investment losses that are covered by the guarantees, and that Voigt failed to honor his guarantees.

Next, Voigt contends that Plaintiffs' claims of breach of contract are barred by the statute of frauds. *See* Minn. Stat. § 513.01 (2010). He asserts that Plaintiffs "cannot proceed on a claim for promissory or equitable estoppel as an end-run around the statute of frauds." "An agreement may be taken out of the statute of frauds . . . by application of the doctrines of promissory or equitable estoppel." *Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn. 1984); *see Casazza v. Kiser*, 313 F.3d 414, 421 (8th Cir. 2002) ("We might be inclined to agree . . . that Minnesota does not endorse such a hard-nosed view."); *Holmes v. Torguson*, 41 F.3d 1251, 1255 (8th Cir. 1994). The Court denies Voigt's motion to dismiss with respect to Counts V and VI.

**G.    Count VII – Unjust enrichment**

Voigt asserts that Plaintiffs' claims of unjust enrichment should be dismissed because Plaintiffs cannot prevail on any of their fraud claims. Having rejected the premise of Voigt's argument, the Court declines to dismiss Count VII.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Voigt's Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 6] is GRANTED IN PART and DENIED IN PART.

2. Counts I, II, and IV are dismissed in part.

Dated: December 27, 2011

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge